IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSHAN KUMARA MALALGODAPITIYA *On Behalf of Himself and All Others Similarly Situated* Plaintiff, v. JAAM, LTD. t/a PARKLANE CLEANERS, *et al.* Defendants. | : : : : : : : : : Case No.: RJL-CV-06-430 : : : : : : |

**PLAINTIFF'S MOTION TO FACILITATE IDENTIFICATION
AND NOTIFICATION OF SIMILARLY SITUATED EMPLOYEES**

Plaintiff Roshan Kumara Malalgodapitiya ("Kumara"), by and through undersigned counsel, hereby moves this Honorable Court to facilitate the identification and notification of similarly situated employees pursuant to the collective action provision of the Fair Labor Standards Act, and, in support thereof, states as follows:

**I.    PROCEDURAL BACKGROUND**

On about March 8, 2006, Kumara filed the above-captioned action, on his own behalf and on behalf of other similarly situated colleagues, against their former employers seeking the recovery of unpaid minimum and overtime wages under the Fair Labor Standards Act (hereinafter "FLSA"), and for other relief.

**II.    FACTUAL BACKGROUND**

Kumara was employed by Defendants from approximately May 2002 through September 22, 2005. See Affidavit of Roshan Kumara Malalgodapitiya, attached hereto as Exhibit 1 ("Kumara Affidavit"), at ¶ 2.  Defendants are in the business of providing dry cleaning and

alteration services in the District of Columbia and Maryland. *Id*. During his employment with Defendants, Kumara regularly worked over forty (40) hours per week but was not compensated at the rate prescribed by law for overtime work (hours worked over forty (40) in a workweek). *Id*. at ¶ 4.

Throughout the time he worked for Defendants, Kumara provided dry cleaning services and had many responsibilities. For example, Kumara operated the cash register, did laundry, worked the dry cleaning machines, pressed clothes, and assisted customers. In addition, each day, Kumara was responsible for opening Defendants' dry cleaning facility, setting up the various machines in the facility, starting up the boiler in the facility, ensuring that the cash registers were in proper operating order, keeping track in a log book of the working time for approximately fifteen (15) to twenty (20) of the facility's other employees, and closing the cash registers at the end of each business day. Moreover, Kumara would collect all the cash from the registers and secure it in a money bag for collection. *Id*. at ¶ 3.

Kumara regularly worked from 6:30 a.m. through 7:30 p.m., Monday through Friday, and regularly worked from 7:30 a.m. through 6:30 p.m. on Saturday. Kumara even occasionally worked approximately eight (8) hours on Sunday cleaning the machines in the dry cleaning facility. On average, Kumara worked approximately seventy (70) hours per week, but Defendants did not keep records of time worked by Kumara nor did they request that Kumara keep track of his working time in the log book. In addition, Kumara never received a paycheck from Defendants; instead, Defendants paid Kumara $500.00, in cash, every two (2) weeks, covering approximately one hundred and forty (140) hours of work. Defendants never indicated to Kumara what, if any, deductions were being made from his pay. *Id*. at ¶ 4.

Kumara has personal knowledge that other current and former employees of Defendants

(who are similarly situated in that they worked for Defendants' at their dry cleaning facilities, they provided dry cleaning services, they were paid on an hourly basis, they were paid in cash by Defendants, and they did not perform work that would qualify them as exempt from the overtime requirements of the FLSA) worked in excess of forty (40) hours per week on a regular basis for Defendants during the relevant time period. These employees also were not compensated at a rate of one and one-half (1½) times their regular rate for overtime hours. Kumara possesses personal knowledge of the fact that other employees were not paid overtime because he was responsible for keeping track of employees' working time in a log book and because many of Kumara's co-workers would regularly complain to him that their pay did not match the number of hours that they worked and that they were not being paid overtime. *Id*. at ¶ 5.

Virtually all full-time employees who worked at Defendants' dry cleaning facility during Kumara's period of employment worked in excess of forty (40) hours per week without being paid at the overtime rate. Indeed, the failure to pay overtime by Defendants was a regular practice engaged in by Defendants. Other employees who worked with Kumara at Defendants' dry cleaning facility and were not paid overtime compensation include: Marina E. Quintanilla; Aneke Mangindan; Blanca Barriento; Lucia Monrax; Sonia Monrax; Yanira Gonsalves; Sandra Duarte; Maria Masariegos; Francisca Jones; Carla Marabilla; Oscar Pleistes; Brenda Aragon; Gloria Ortega; "Holleen;" "Jim;" "Vicki;" "Sonja;" "Rosa;" and "Ian." All these employees provided dry cleaning services for Defendants, including but not limited to, operating cash registers, doing laundry, working the dry cleaning machines, pressing clothes, and assisting customers. There are other employees who were not properly compensated for overtime hours worked. *Id*. at ¶ 6.

For the reasons set forth below, each of these employees, and others who have yet to be

3

identified, are entitled to be notified about their legal rights under the FLSA as well as the existence of this lawsuit as a means of enforcing those rights.

### III.     LEGAL ARGUMENT

    **A.     This Motion Should Be Granted Because the FLSA Authorizes Similarly Situated Employees to Litigate as a Class**

Under 29 U.S.C. § 216(b) of the FLSA, "an action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*." (Emphasis added.)  Moreover, as succinctly stated by this Court in *McNeil v. District of Columbia*, 1999 WL 571004 (D.D.C. Aug. 5, 1999), "Exercising this court's discretion to assist all persons who may have a legitimate claim [for unpaid overtime] to assert is the only course of action consistent with the broad remedial goal of [the] FLSA; reducing the defendant's potential liability by making plaintiffs' notification of other claimants as difficult as possible is not." *Id*. at *3.

For approximately sixty-five (65) years, Federal courts have been examining the extent to which one or more named plaintiffs must be "similarly situated" to the proposed class of unnamed plaintiffs in order for all of the plaintiffs to proceed before the court together as a collective action.  In *Shain v. Armour & Co*., 40 F. Supp. 488 (W.D. Ky. 1941), which involved a claim for unpaid overtime wages, the court thoroughly analyzed the "similarly situated" standard, and concluded as follows:

> The [FLSA] authorizes an employee to sue for himself 'and other employees similarly situated.'  It is very comprehensive and inclusive; it contains no restrictions other than that the other employees be similarly situated. . . . *Employees may be similarly situated without being identically situated.  The evident purpose of the Act is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character*

4

> *of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other*.

*Id*. at 490 (emphasis added).

In the years following the *Shain* decision, this same conclusion has been reached by numerous other courts, including this Court. *See*, *e.g.*, *Hyman v. First Union Corp.*, 982 F. Supp. 1, 7 (D.D.C. 1997); *Bradford v. Bed Bath & Beyond*, 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002); *Pritchard v. Dent Wizard Int'l Corp*., 210 F.R.D. 591, 596 (S.D. Ohio 2002); *Schwed v. G.E. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D. Ill. 1982); *Riojas v. Seal Produce, Inc*., 82 F.R.D. 613, 616 (S.D. Tex. 1979).

In *Hoffmann-LaRoche v. Sperling,* 493 U.S. 165, 169 (1989), the United States Supreme Court resolved a split among the circuits with respect to the role the courts should take in supervising the "opt-in" process and held that the district courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs. In *Hoffmann-La Roche*, the Supreme Court also made the following important pronouncements: (1) once an action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way; *Id*. at 170-171; (2) it lies within the discretion of the trial court to begin its involvement early at the point of initial notice; *Id*. at 171; (3) by monitoring the preparation and distribution of the notice, the Court can insure that it is timely, accurate, and informative; *Id*. at 172; and (4) the district court has discretion, early in the litigation, to permit discovery of the names and addresses of employees to insure that such potential plaintiffs are promptly and accurately notified. *Id*. at 170; *see also Dybach v. State of Fla. Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991) (the remedial purposes are

5

best served if the district court is deemed to have the power to give such notice to other protected members of the class provided the court is satisfied that there are other employees who desire to opt-in and who are similarly situated).

Significantly, "[t]he strict requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to FLSA 'collective actions,' and thus no showing of numerosity, typicality, commonality and representativeness need be made. Rather, plaintiffs must meet only one threshold requirement: they must demonstrate that potential class members are 'similarly situated.'" *Levinson v. Primedia, Inc.*, No. 02 Civ.2222, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003). Moreover, the mere fact that the employees are categorized in a certain way by their employer[1] or that the employees may work in multiple locales[2] is irrelevant to the issue of whether or not they are similarly situated for purposes of a collective action under the FLSA.

### B. The Motion Should Be Granted Because the District Court is Authorized to Help Facilitate the Notification of Similarly Situated Employees

It is well-settled that "[d]istrict courts have the discretionary power to authorize the sending of notice to potential class members to inform them of the action and to give them the opportunity to participate by opting in." *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 237-38 (N.D.N.Y. 2002) (citing *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 169-70 (1989)); s*ee also Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (same). Indeed, "it is 'unlikely that Congress, having created a procedure for representative action [under the FLSA], would have wanted to prevent the class representatives from notifying

---

[1] *See*, *e.g.*, *De Asencio v. Tyson Foods, Inc*., 130 F. Supp. 2d 660, 663-64 (E.D. Pa. 2001) (court authorized notice to potential plaintiffs in unpaid overtime case despite fact that plaintiffs worked "at various production positions within [defendant's] two plants").

[2] In *Hyman v. First Union Corp.*, 982 F. Supp. 1 (D.D.C. 1997), the district court permitted an FLSA case to proceed as a collective action despite the fact that the proposed members of the class were from three different states – Virginia, Maryland, and the District of Columbia. *See id*. at 4; s*ee also Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307-08 (S.D.N.Y. 1998) (court allowed plaintiffs to notify similarly situated employees in unpaid overtime case even though employees worked at 15 different restaurants).

6

other members of the class that they had a champion.'" *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) (citation omitted). Accordingly, such notice may be, and repeatedly has been, authorized and facilitated by district courts across the country in cases, like this one, involving claims under the FLSA for the recovery of unpaid overtime wages. *See*, *e.g.*, *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91 (S.D.N.Y. 2003); *Kane*, 138 F. Supp. 2d at 214; *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660 (E.D. Pa. 2001), *rev'd on other grounds*, 342 F.3d 301 (3rd Cir. 2003); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361 (M.D. Ala. 1999); *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 305-06 (S.D.N.Y. 1998); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234 (N.D.N.Y. 2002); *see also Carter v. Indianapolis Power and Light Co.*, No. IP102CV01812SEBVSS, 2003 WL 23142183 (S.D. Ind. Dec. 23, 2003); *De La Fuente v. FPM Ipsen Heat Treating, Inc.*, No. 02-C-50188, 2002 WL 31819226 (N.D. Ill. Dec. 16, 2002); *Harrington v. Education Mgmt. Corp.*, No. 02 Civ. 0787 (HB), 2002 WL 1343753 (S.D.N.Y. June 19, 2002); *Bontempo v. Westwood One Broad. Serv., Inc.*, No. 01-C-8969, 2002 WL 1925911 (W.D. Ill. May 3, 2002); *Vazquez v. Tri-State Mgmt. Co.*, No. 01C5926, 2002 WL 58718 (N.D. Ill. Jan. 14, 2002); *Ballaris v. Wacker Silttronic Corp.*, No. 00-1627-KI, 2001 WL 1335809 (D. Or. Aug. 24, 2001); *Clark v. Dollar General Corp.*, No. 3:00-0729, 2001 WL 878887, at *3 (M.D. Tenn. May 23, 2001); *Krieg v. Pell's Inc.*, No. IP00-1230-C-T/G, 2001 WL 548394 (S.D. Ind. March 29, 2001).

The rationale for this court-facilitated notification procedure was best explained by the United States Supreme Court in *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165 (1989):

> A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising

> from the same alleged [wrongful] activity. *These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties.*

*Id*. at 170 (emphasis added).

The United States District Court for the District of Maryland has granted identical motions filed by counsel for Plaintiffs in three recent cases, *Venus Rawls, et al. v. Augustine Home Health Care, Inc.*, Civil Action No. WMN-05 -2602 (Motion granted by Judge Nickerson in January 2006); *Frisley Reyes, et al. v. Superior Maintenance & Management Company, Inc., et al.*, Civil Action No.: RWT-03-3631 (Motion granted by Judge Titus in late 2004); and *Turner v. Human Genome Sciences, Inc.*, Civil Action No. DKC-01-3580 (Motion granted by Judge Chasanow in 2002). In all three cases, additional plaintiffs joined after the Court ordered the defendant(s) to provide the names and addresses of similarly situated employees and notices were sent advising them of the pendency of the action and of the opportunity to join the lawsuit.

**C.    The Motion Should Be Granted Because Plaintiff's Standard of Proof at this Stage is "Modest"**

In making the "similarly situated" determination, most courts employ a two-step procedure which involves an initial assessment as to whether notification of similarly situated employees is warranted under the circumstances, and a subsequent, more finalized determination regarding the management and resolution of the claims filed by those employees who, having been so notified, actually elected to seek redress before the court. This procedure was summarized by the United States District Court for the Southern District of New York:

> Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff: "[T]he Court need not evaluate the merits of [a plaintiff's] claims in

8

> order to determine that a definable group of 'similarly situated' plaintiffs" exists. "[T]he court need only reach a *preliminary* determination that potential plaintiffs are 'similarly situated.'" Certainly the Plaintiff must still prove at trial that the positions at issue actually qualify as non-exempt under the FLSA. But that is not the inquiry to be answered in deciding this motion. The ultimate determination regarding the merits of the case, and whether the class is properly situated -- which requires a more "stringent" inquiry -- is made later in the litigation process, after more thorough discovery.
>
> Here, I determine only that notice may be sent to those people who, at this very preliminary stage in the litigation, might be potential plaintiffs. I am not determining that those being notified "are, in fact, similarly situated" to the Plaintiff, and I make no determination regarding the legal rights and responsibilities of the parties. Again, the Plaintiff's burden for proving that he is similarly situated to these potential plaintiffs is minimal for this preliminary determination -- a determination that can be modified or reversed after discovery is complete. Should it become clear later that the parties who have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary and appropriate to ensure that the case is properly formed.[3]

*Gjurovich*, 282 F. Supp. 2d at 96 (emphasis in original) (citations omitted); *see also Goldman v. Radio Shack Corp.*, No. 2:03-CV-0032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) (the first stage of the two-step procedure "requires a lax showing of 'similarly situated'"); *Carter*, 2003 WL 23142183, at *3 ("Before notice is authorized, the court is not required to come to a 'final determination' that the similarly-situated requirement has been met.").

Thus, under the current circumstances of the instant case, where Kumara merely seeks the identification of and notification to prospective class members at an early stage in the litigation, Plaintiff "need only 'mak[e] a *modest* factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Roebuck*, 239 F. Supp. 2d at 238 (emphasis added) (quoting *Realite*, 7 F. Supp. 2d at

---

[3] The New York court then noted that "should discovery reveal that plaintiffs in fact are not similarly situated, or that only plaintiffs who worked in the same . . . [location] or who held the same job type are similarly situated, I may later decertify the class, or divide the class into subgroups, if appropriate." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 n.1 (S.D.N.Y. 2003) (quoting *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998)).

306); *see also Pritchard*, 210 F.R.D. at 596. In other words, "plaintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Schwed*, 159 F.R.D. at 375-76; *see also Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278 (D. Minn. 1992) ("plaintiffs [need only] come forward with evidence that establishes a colorable basis for their claim that the potential plaintiffs are similarly situated").

The reason for such a lenient burden is that "a strict standard of proof on the plaintiffs at this stage would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' . . . of the FLSA." *Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687, 690 (M.D. Fla. 1994) (quoting *Garner v. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991)). Accordingly, "[a]t this initial 'notice stage,' the court usually relies 'only on the pleadings and any affidavits that may have been submitted'" in ruling on motions like the one being presented by Plaintiff herein. *Kane*, 138 F. Supp. 2d at 214 (citations omitted); *see also Mooney v. Aramco Servs., Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995).

Finally, it is important to note that prompt notification of the potential class members is critical in that, unlike a Rule 23 class action, the statute of limitations is not tolled for those potential class members by the filing of the present Complaint. *See* 29 C.F.R. § 790.21(b) (in collective actions under the FLSA, unnamed plaintiffs are not deemed to have commenced the action until such time as his/her written consent to become a party plaintiff is filed in the court).

    **D.**    **The Motion Should Be Granted Because Kumara Has Met His Burden of Demonstrating that Other Employees Were "Similarly Situated" With Respect to their Overtime Pay**

As set forth above and in Kumara's Affidavit attached hereto, Kumara was paid $500.00 in cash every two weeks for approximately one hundred and forty (140) hours of work. Kumara

was not properly compensated for hours worked over forty (40) at a rate of one and one-half (1½) times his regular rate. In addition, as detailed in Kumara's Affidavit, there are other employees who worked at Defendants' dry cleaning facility with Kumara who also were not properly paid overtime wages as required by the FLSA. Moreover, with a widespread practice of failing and refusing to pay overtime wages to hourly employees at the dry cleaning facility where Kumara worked, it stands to reason that Defendants paid workers at their other dry cleaning facilities (one other facility in the District of Columbia and at least two other facilities in Maryland) in the same manner. This represents numerous other employees who have had their rights to overtime pay under the FLSA violated.

## IV.   CONCLUSION

It is abundantly clear that named plaintiffs in a lawsuit to recover unpaid overtime wages are permitted, with court approval, to provide notice of the suit to those potential plaintiffs who worked in a class of similarly situated employees. This case calls for such action.

WHEREFORE, Kumara hereby respectfully requests that this Honorable Court:

A.   Enter an Order compelling Defendants to produce to Kumara's counsel, within fifteen (15) days, a list of the full name, last known residential address, residential phone number, work address, work phone number, date of birth, social security number, and e-mail address of each and every individual who was employed, and paid an hourly wage, by Defendants at any time since March 2003 at any of Defendants' dry cleaning facilities in the District of Columbia and Maryland;

B.   Approve and sign the attached "Important Notice" form for future use in notifying the class of potential plaintiffs;

C.   And for all other and further relief that the nature of this cause may require.

Respectfully submitted,


_____/s/_____
Philip B. Zipin, Bar No. 367362
David A. Lucas, Bar No. 481890
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax: 301-587-9397
Email:     pzipin@zipinlaw.com
           dlucas@zipinlaw.com

*Counsel for Plaintiff*