## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROSHAN KUMARA | : | |
| MALALGODAPITIYA, *et al.* | : | |
| | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | Case No.: 1:06 CV 00430 (RJL) |
| | : | |
| JAAM, Ltd. t/a | : | |
| PARKLANE CLEANERS, *et al.* | : | |
| | : | |
|     Defendants. | : | |

### DEFENDANTS' STATEMENT OF MATERIAL FACTS IN DISPUTE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants JAAM, Ltd., t/a Parklane Cleaners, and Faramarz Mamdouhi, by and through their counsel, Gleason, Flynn, Emig & Fogleman, Chartered, and pursuant to Fed R. Civ. P. 56(c), L. Cv. R. 7(b), and the Court's August 9, 2006 Scheduling Order, hereby respectfully submit their Statement of Material Facts in Dispute and Memorandum of Points and Authorities in Opposition to the Plaintiff's Motion for Partial Summary Judgment. As discussed in detail below, a genuine issue of material fact exists as to whether Plaintiff Roshan Kumara Malalgodapitiya (hereinafter referred to as "Plaintiff Kumara") was an exempt employee under the administrative and/or executive exemptions to the Federal Fair Labor Standards Act ("FSLA"), 29 U.S.C. §§ 201 *et seq.* Accordingly, Plaintiff Kumara's Motion for Partial Summary Judgment should be denied. In further support of their opposition to the instant motion, the Defendants hereby respectfully state as follows:

## FACTUAL BACKGROUND AND STATEMENT OF MATERIAL FACTS IN DISPUTE

At all times relevant to the instant matter, the Defendants owned and/or operated a pair of dry cleaning stores in the District of Columbia. The first store was known as "Parklane Cleaners," and was located at 4304 Connecticut Avenue, N.W. The second store was known as "Parkland Cleaners," and was located at 3811 McKinley Street, N.W.

In or around November or December 2001, the Defendants were seeking a manager for the Parklane store. Deposition of Faramarz "Fred" Mamdouhi, attached hereto as Exhibit A, at pp. 5-7. Plaintiff Kumara was referred to the Defendants by one of their employees, and was hired with the understanding that he was going to "learn all aspects of this management, managing the store." Exhibit A at p. 7. Plaintiff Kumara was warned at the time of his hiring that he would have to work long hours in order to learn the Defendants' business. Exhibit A at pp. 7-8. In response to this warning, Plaintiff Kumara told Defendant Mamdouhi that the hours would not be a problem. Id.

Plaintiff Kumara was offered a starting salary of approximately $325 per week. Exhibit A at p. 18. The Defendants considered this amount to be a reasonable salary for a beginning manager, and it was their understanding that such amount exceeded the minimum wage required for classification as an exempt "manager" under applicable law. Exhibit A at pp. 44-47. ("I remember I knew administrative employees are not included in overtime pay. That is why we want[ed] a manager from the beginning.") *See also* Deposition of Mehdi Nezam, attached hereto as Exhibit B, at pp. 8-11, 16-17. ("We paid him according to the salary for management...It was above $250, which was [the] minimum for management at that time.") In contrast, the Defendants' non-management employees were paid strictly on an hourly basis. Id.

At the time of his hiring, Plaintiff Kumara was promised regular pay increases as he gained experience in running the Parklane store. *See* Affidavit of Mangelo Mawilmada, attached hereto as Exhibit C, at ¶ 3. ("It was explained to [Plaintiff Kumara] that he would [be] train[ed] as a manager of the store and his salary would increase as his responsibilities grew.") Plaintiff Kumara received regular salary adjustments as promised, topping out at a salary of approximately $500 per week as of the time of his resignation from the Defendants' employ. Exhibit A at pp. 18-22, Affidavit of Utuh Rahardja Putra, attached hereto as Exhibit D, at ¶ 6. ("[Plaintiff Kumara] informed me that he received a raise and that he was earning $1,000 every two weeks.")

Generally, Plaintiff Kumara worked at the Parklane store from 7 a.m. from 7 p.m., with a lunch break, on Mondays, Tuesdays, Thursdays, and Fridays. Exhibit A at pp. 9-10. On Wednesdays, Plaintiff Kumara would work from 7 a.m. to sometime around noontime, without a lunch break. Additionally, he worked Saturdays from 8 a.m. to 6 p.m., with a lunch break. Id. *See also* Exhibit D at ¶ 5. However, in deference to his managerial position, Plaintiff Kumara was given some latitude with regard to his work hours. Exhibit A at pp. 12-13. ("...I wouldn't really question him about his time...I didn't have to keep him to know exactly every day because he wasn't an employee like everybody else because he was in charge.") Indeed, Plaintiff Kumara would occasionally leave work early, or would call out of work. Exhibit A at p. 14. Moreover, Plaintiff Kumara's absences from work became more frequent during and after March 2005. Exhibit A at p. 41. Although the reasons for such absences were unclear, Plaintiff Kumara's attendance was not a matter of any particular concern for the Defendants, as he was a salaried employee and was keeping up with his required duties. Exhibit A at p. 43 ("Because he

was salary, it wasn't important, we didn't care that much as long as he took care of the whole thing.")

Among his responsibilities, Plaintiff Kumara was charged with opening and closing the Parklane store, resetting the alarm system, performing simple repairs of the cleaning equipment, putting change in the cash register, turning on the computer system, setting the boiler, dealing with customers, keeping track of other employees' time, interacting with vendors and repair people, stocking necessary supplies, and reporting the status of the store's operations to Defendant Mamdouhi and/or his partner, Mehdi Nezam.  Exhibit A at pp. 18, 26-28.  In fact, Plaintiff Kumara was using his personal cellular telephone for business calls on such a regular basis that the Defendants ultimately decided to subsidize Plaintiff Kumara's cellular telephone expenses.  Exhibit A at pp. 52-55.  Moreover, Kumara was so busy that the Defendants had to hire an assistant manager in June 2004 in order to ensure adequate managerial coverage for the front of the store.  Exhibit A at pp. 39-40, Exhibit D at ¶¶ 2, 6.

Plaintiff Kumara also had significant personnel management responsibilities.  Plaintiff Kumara was responsible for instructing the workers at the Parklane store, and for reporting to Defendant Mamdouhi and/or Mr. Nezam if the workers were not performing satisfactorily. Exhibit A at p. 28, Exhibit D at ¶ 3.  Plaintiff Kumara also had the ability to recommend an increase in an employees' pay or, conversely, could recommend that an employee be disciplined or fired.  Exhibit A at pp. 28-34.

It is important to note that Plaintiff Kumara was given more or less free reign to run the Parklane store, as Defendant Mamdouhi and/or Mr. Nezam would make a brief appearance at the Parklane store in the morning, and would then spend the remainder of the work day tending to affairs at the Parkland store.  Exhibit A at pp. 11, 63-64.  The Parkland store did not have a

manager, as it was run by Defendant Mamdouhi and Mr. Nezam themselves. Exhibit A at p. 64. Indeed, Plaintiff Kumara's management of the Parklane store allowed Defendant Mamdouhi and Mr. Nezam to increase the time they spent at the Parkland store, as they knew Plaintiff Kumara was capable of handling the Parklane store without their assistance. Exhibit A at pp. 34-35, 64-65.

On or about March 8, 2006, the Plaintiff filed his Complaint in the instant action. The Complaint includes claims against the Defendants for violations of various federal and stage wage and hour statutes, including the Federal Fair Labor Standards Act ("FSLA"), 29 U.S.C. §§ 201 *et seq.* Such complaint has since been amended to add additional claims, including one for breach of contract. On or about December 8, 2006, Plaintiff Kumara filed the instant motion, seeking a summary rejection of the Defendants' claim that Plaintiff Kumara was a *bona fide* administrative and/or executive employee during his period of employment by the Defendants, thus rendering him exempt from the requirement that he be paid overtime for those hours he worked over and above the forty hours per week threshold. Plaintiff Kumara contends that the alleged fact that he was not an administrative and/or executive employee of the Defendants cannot be genuinely disputed, and that he is entitled to judgment on the Defendants' affirmative defenses as a matter of law.

However, as discussed herein, significant issues of genuine fact remain in dispute relating to both of the Defendants' affirmative defenses. Such issues of fact preclude a grant of partial summary judgment in Plaintiff Kumara's favor on these defenses, and Plaintiff Kumara's motion should be denied on this ground.

## POINTS AND AUTHORITIES

**I.**     **Applicable Standards**

    **A.**     **Summary Judgment Standard**

As a general principle, "[t]he purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." McGrath v. City of Philadelphia, 864 F. Supp. 466, 472 (E.D. Pa. 1994), *citing*, Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977). A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).

The party moving for summary judgment bears the initial burden of identifying portions of the record demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed. 265 (1986). In response, the non-moving party must "go beyond the pleadings and by [their] own affidavits, or depositions, answers to interrogatories, and admissions on file 'designate' specific facts showing that there is a genuine issue for trial." Lightfoot v. District of Columbia, 339 F.Supp.2d 78, 87 (D.D.C. 2004), *quoting*, Celotex Corp., 417 U.S. at 324, 106 S.Ct. 2548. "To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party." Lightfoot, 339 F.Supp.2d at 87. See also Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In evaluating a motion for summary judgment, the Court must draw all justifiable inferences in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. 2505. However, "mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." <u>Williams v. Callaghan</u>, 938 F. Supp. 46, 49 (D.D.C. 1996). *See also* <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (The party opposing a motion for summary judgment must do more than simply "show that there is some metaphysical doubt as to the material facts").

However, it is critical to note that a summary judgment motion "is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences." <u>Masilionis v. Falley's Inc.</u>, 904 F. Supp. 1224, 1226 (D. Kan. 1995), *citing*, <u>Windon Third Oil and Gas v. Fed. Deposit Ins.</u>, 805 F.2d 342, 346 (10th Cir. 1986), *cert. denied*, 480 U.S. 947 (1987). *See also* <u>Aamold v. United States</u>, 39 Fed. Cl. 735, 739 (1997). As such "summary judgment is appropriate only where application of the law to [those] undisputed facts will reasonably support only one ultimate conclusion." <u>Richardson v. New York State Department of Correctional Serv.</u>, 180 F.3d 426, 438 (2d Cir. 1999).

In this case, significant issues of material fact remain in dispute, particularly concerning the nature of Plaintiff Kumara's employment by the Defendants. As discussed in further detail below, these unresolved issues of material fact preclude a grant of partial summary judgment in Plaintiff Kumara's favor on the Defendants' affirmative defenses under the FLSA. Accordingly, Plaintiff Kumara's motion for summary judgment should be denied.

### B.    General FLSA Standard

Reduced to its essence, the FSLA requires that "all covered employees be paid not less than one and one-half times their regular rate for any hour worked more than 40 hours in a week.

29 U.S.C. §207(a); <u>Harris v. District of Columbia</u>, 741 F. Supp. 254, 259 (D.D.C. 1990). However, the FSLA "has a series of exemptions from the coverage of its overtime provisions." <u>Id.</u>  In particular, an employer need not pay overtime "if an employee works in a '*bona fide* executive, administrative or professional capacity.'"  <u>Id.</u>, *quoting*, 29 U.S.C. §213(a)(1).  In this case, the Defendants have claimed the protections of the administrative and/or executive exemptions.

The exceptions to the FSLA are to be narrowly construed.  <u>Masilionis</u>, 904 F. Supp. at 1228.  An employer claiming that an employee is exempt from the overtime provisions of the FSLA has the burden of demonstrating the employee falls within the claimed exception.  <u>Roney v. U.S.</u>, 790 F. Supp. 23, 26 (D.D.C. 1992).  *See also* <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 196-97 (1974).  In this regard, the employer must prove each element of the claimed exception by clear and affirmative evidence.  <u>Roney</u>, 790 F. Supp. at 27.  Otherwise, the employee must be given coverage under the FSLA.  <u>Id.</u>

The question as to whether an employee should be excluded from the overtime requirements of the FSLA is a mixed issue of law and fact.  <u>Holzapfel v. Town of Newburgh, NY</u>, 145 F.3d 516, 521 (2d Cir. 1998).  "The ultimate question of whether an employee is excluded from the overtime requirements of the FSLA is a question of law."  <u>Cooke v. General Dynamics Corp.</u>, 993 F. Supp. 56, 64 (D. Conn. 1997), *citing*, <u>Icicle Seafoods, Inc. v. Worthington</u>, 475 U.S. 709, 714 (1986).  However, the resolution of such question of law is necessarily predicated on the resolution of any number of issues of fact.  *See* <u>Shockley v. City of Newport News</u>, 997 F.2d 18, 26 (4th Cir. 1993) ("Whether a particular duty is administrative or managerial presents a legal question…In contrast, the amount of time devoted to managerial duties, and the significance of those duties, present factual questions.") (Internal citations and

quotation omitted.)  Indeed, the determination as to whether an employee is exempt is principally

one of fact, and each case must be judged on its own factual merits.  Dalheim v. KDFW-TV, 706

F. Supp. 493, 495 (N.D. Tex. 1988); Sherwood v. The Washington Post, 677 F. Supp. 9, 14

(D.D.C. 1988).  *See also* Walling v. General Industries Co., 330 U.S. 545, 549-50 (1947); Harris,

741 F. Supp. at 259 ("In the end, deciding whether an employee is exempt must be a voyage

through fact-bound waters.  Although there are a great many stars of law to navigate by, the

course turns on the facts of an employee's job duties.")   Such factually intensive inquiries are

"not appropriate for resolution at the summary judgment stage."  Bennett v. Progressive Corp.,

225 F. Supp. 2d 190, 218 (N.D.N.Y. 2002).  *See also* Bothell v. Phase Metrics, Inc., 299 F.3d

1120,  1128-29 (9th Cir. 2002). ("It is impossible to determine whether Bothell's work was

exempt...until the nature of his daily activities is resolved by the fact-finder.)  (Internal citations

omitted.); Fife v. Harmon, 171 F.3d 1173, 1176 (8th Cir. 1999); Cooke, 993 F. Supp. at 63-64;

McGrath, 864 F. Supp. at 489. ("In addition, the existence of a material fact as to whether the

Commanders' primary duty is management precludes the entry of summary judgment with

respect to the Section 13(a) executive employee exemption.")

       In light of the foregoing standard, the Plaintiff's Motion for Partial Summary Judgment

should be denied.  As demonstrated below, the record in this case presents genuine issues of

material fact as to the precise nature of Plaintiff Kumara's employment by the Defendants.  As

such, it cannot be said as a matter of law that the Defendants are not entitled to the protections of

the administrative and/or executive exceptions to the FSLA.

## II.    Plaintiff Kumara Is Not Entitled to Summary Judgment on the Defendants' Affirmative Defenses.

       As a general rule, an employee's job title alone "is insufficient to establish the exempt

status of an employee."  29 C.F.R. §541.2.  Rather, the Court must examine the factual

circumstances surrounding the employees' "primary duty" in order to determine whether the employee fits within one of the FLSA's overtime exemptions. Elliott v. Flying J., Inc., 2006 WL 1308204 at *3 (S.D. Ga. May 8, 2006). Under the FSLA, an employee's primary duty is defined as "the principal, main, major or most important duty that the employee performs." Id., *quoting*, 29 C.F.R. §541.700(a). This language has been encapsulated in the "rule of thumb" that an employee's primary duty is that on which he or she spends the majority of their time while at work. Cooke, 993 F. Supp. at 59. However, a mere analysis of how an employee spends his or her time is not necessarily dispositive as to the primary duty issue. Bennett, 225 F. Supp.2d at 216. Rather, in determining an employee's primary duty, "the court must consider all 'the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.'" Id. In this regard, the Court may consider factors that include, but are not limited to:

> [T]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

> Elliott, 2006 WL 1308204 at *3, *quoting*, 29 C.F.R. §541.700(a).

In an effort to clarify the myriad of possible factual circumstances that could potentially be presented in an FLSA exemption case, the United States Department of Labor has promulgated a series of interpretive regulations setting forth various scenarios that "fit" within one of the delineated overtime pay exemptions. *See, e.g.,* 29 C.F.R. §§541.203(c)(d) and (3). However, it is appropriate to note that the interpretive regulations are not binding in and of themselves, and are intended merely to provide "a body of experience and informed judgment to which courts may properly resort for guidance." Burke v. County of Monroe, 225 F. Supp.2d 306, 317 (W.D.N.Y. 2002). In this regard, a court must carefully consider the particular facts of

each case in order to determine whether summary judgment is an appropriate remedy. <u>Sherwood</u>, 677 F. Supp. at 14.

In this case, the Defendants have claimed that Plaintiff Kumara was exempt from the overtime provisions of the FLSA by operation of the administrative and/or executive exceptions to that law. As indicated below, Plaintiff Kumara's primary duty while in the Defendants' employ falls within both of these exceptions to the general requirement regarding the payment of overtime wages. *See* 29 U.S.C. §207(a). Accordingly, Plaintiff Kumara's motion for partial summary judgment on these affirmative defenses should be denied.

A.   <u>**Plaintiff Kumara Is Not Entitled to Summary Judgment on the Administrative Exception.**</u>

In making a determination as to whether an employee fits into the administrative exemption, the applicable regulations mandate that the employer satisfy both the "salary" test and the "duties" test. <u>Bennett</u>, 225 F.Supp.2d at 215. In this case, the "salary" test is not at issue, as both sides agree that Plaintiff Kumara was earning more than $250 per week at all times relevant to the instant matter, thus meeting the requirements of the salary test. *See* Memorandum of Law In Support of Plaintiff's Motion for Partial Summary Judgment at p. 9. Therefore, in order to survive the instant motion for partial summary judgment, the Defendants need only produce a genuine issue of material fact with regard to the duties test, also known as the "short test." <u>Bennett</u>, 225 F. Supp.2d at 216; <u>Roney</u>, 790 F. Supp. at 26-27. *See also* <u>Cooke</u>, 993 F. Supp. at 58.

Under the short test, an employer must establish that (1) the employee's primary duty consists of either the performance of office or non-manual work directly related to the management policies or general business operations of the employer or the employer's customers, and (2) the performance of such duty includes work requiring the exercise of

discretion and independent judgment.  29 C.F.R. §541.200.  *See also* <u>Bennett</u>, 225 F. Supp. at

216; <u>Roney</u>, 790 F. Supp. at 27.

The case of <u>Stricker v. Eastern Off Road Equipment, Inc.</u>, 935 F. Supp. 650 (D.Md.

1996) is instructive as to how the short test should be handled in a case where the employee is a

manager of store and, as such, defies description as a classic "white-collar" worker.  <u>Stricker</u>,

935 F. Supp. at 658.  ("The plaintiff is not disqualified from the administrative exception simply

because his work involved the 'hands-on' management of a retail store and required him to

perform some duties outside of the store.")  It is important to note that, contrary to Plaintiff

Kumara's assertion in his motion, the interpretative regulations themselves "do not purport to

*require* that exempt administration take place in an office or at a desk.  The regulation as written

exempts office *or* non-manual work.  Some of the examples of exempt work listed in the

interpretations are plainly not 'white-collar office work'  thus making it clear that the word 'non-

manual' in the regulations is intended to provide an additional category of exempt work and is

not intended to be descriptive of office work."  <u>Id.</u> (Emphasis in original.)

In <u>Stricker</u>, the Plaintiff was a manager of an off-road trucking supply store.  In analyzing

the employer's claim that Stricker was exempt under the administrative exemption to the

overtime provisions of the FLSA, the United States District Court for the District of Maryland

found that:

> [a]t all relevant times, the plaintiff was the highest ranking employee at the
> Gaithersburg store. As such he was responsible for all of the duties associated
> with running a retail establishment. For example, the plaintiff testified that he was
> responsible for "[o]rganizing the charges, balancing the cash register, organizing
> the sales tickets or invoices, tracking sales, making the bank deposit
> up…[r]ecording and logging special orders, [and] recording ⋯ the breakdown in
> sales." The plaintiff also would open all mail addressed to the store or the store
> manager, set up and  maintain store displays, open the store in the morning and
> close it at night, and respond to alarms when they sounded in the store. Although

he did not have final hiring authority, the plaintiff was authorized to recruit, interview, and recommend prospective hires to the regional manager.

Stricker, 935 F. Supp. at 656-57.

Additionally, the court stated that:

> [t]he plaintiff was also responsible to upper management for the financial health of the store, including reaching retail sales goals. He was responsible for maintaining the proper level of inventory, ensuring that merchandise was available to meet customer needs, and avoiding "shrinkages and overages." If the inventory was low for an item, the plaintiff would conduct a computer search for the item and contact the person responsible for inventory control at the warehouse to correct the shortage. When a customer requested merchandise that Eastern Off Road did not supply, the plaintiff had the authority to special-order the item from companies other than Eastern Off Road. He did not require authorization to place such orders, and he had the authority to negotiate the price of these special order items where there was no predetermined price between Eastern Off Road and the supplier. The plaintiff also had the discretion to set retail prices, within a range, to individual customers and dealerships.

> Id. at 657.

Finally, the court noted that:

> [f]or a period, the plaintiff had supervisory responsibilities as well. From December 1993 to April 1994 the plaintiff supervised an assistant manager. The plaintiff was in all respects the supervisor of the assistant manager; the plaintiff had the authority to warn and discipline the assistant manager, and he was authorized to recommend the assistant manager's termination or suspension. The plaintiff was responsible for drafting his employee's work schedule, as well as his own. Finally, the plaintiff attended monthly manager's meetings at which the plaintiff, other managers, and upper management discussed the company's performance. The plaintiff participated at these meetings and expressed his opinion about matters affecting the Gaithersburg store.

> Id.

Based on these facts, the court found that Stricker was subject to the administrative exemption to the overtime provisions of the FLSA. Id. With regard to the first prong of the short test, the court found that Stricker's "job duties involving routine and special procurement of inventory, negotiating prices with dealers and purchasers of the store's merchandise…and the

cash management of the store" all related to management policies and/or general business operations, as they entailed either the formulation of policy and/or executing and carrying such policy out. Id., citing, 29 C.F.R. §541.205(b).

With regard to the second prong of the short test, the Stricker court found that Stricker's "work involving the procurement of inventory, particularly special orders...supervising the assistant manager; and establishing prices for merchandise [all] involve[d] matters which commit[ed] Eastern Off Road in substantial respects financially and otherwise." Id., quoting, 29 C.F.R. §§541.207(c)(6), (d)(2).   As such, they constituted matters involving discretion and independent judgment, thus satisfying the second prong of the short test. Stricker, 935 F. Supp. at 657.

The Stricker court then looked to the interpretive regulations for assistance on the primary duty issue.  The interpretive regulations state that:

> [I]n some...subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty.

> Id. at 658-59, quoting, 29 C.F.R. §541.103.

In applying this regulation, the Stricker court held that Stricker's primary duty was administrative in nature due to the facts that:

> the plaintiff was the highest ranking employee located at his store. Either alone, or with a co-manager, the plaintiff was responsible for the "day-to-day operations" of the store. Even if the plaintiff spent more than half of his workday performing non-exempt work, his primary duty was to manage the store. The plaintiff was responsible for ensuring that the store's sales goals were met, that the store was neither over nor understocked with merchandise, that inventory was ordered in a timely fashion, that the store opened and closed on time, and that customers were

satisfied. Because administration of the store had "special significance relative to the [plaintiff's] other duties," administration was the plaintiff's "primary duty."

Id. at 659. *See also* Shockley, 997 F.2d at 28.

The facts of the Stricker case sit on all-fours with the facts of the instant matter. While in the Defendants' employ, Plaintiff Kumara was the highest ranking employee located at the Parklane store the overwhelming majority of the time. *See* Exhibit A at pp. 11, 63-65. He was, either alone, or in connection with the front-line assistant manager, Utuh Rahardja Putra, responsible for the day-to-day operations of the store. Id. In this regard, he was responsible for, among other things, supervising employees, opening and closing the store, keeping the store adequately supplied, making minor repairs to cleaning equipment, administering the cash register, dealing with customers, and coordinating with vendors. Exhibit A at pp. 18, 26-28. Contrary to Plaintiff Kumara's assertion in his motion, these are not a series of discrete skills that he merely "picked up" during his time in the Defendants' employ. *See* Memorandum of Law In Support of Plaintiff's Motion for Partial Summary Judgment at pp. 13-14. These activities represent tasks that Plaintiff Kumara was specifically hired to perform as the manager of the Parklane store. Exhibit A at pp. 7-8. As Defendant Mamdouhi said in his deposition, Plaintiff Kumara, like the plaintiff in Stricker, was charged with taking care of "the whole thing." Exhibit A at p. 43. In other words, his primary duty was the administration of the Parklane store.

The sorts of activities performed by Plaintiff Kumara on a day-in-day-out basis satisfy the first prong of the short test, as they all relate to management policies and/or general business operations. In particular, they implicate the setting and/or implementation of the business' operational policies. Stricker, 935 F. Supp. at 657. Plaintiff Kumara's job activities directly related to the general business practices necessary to run a successful dry cleaning store. To be certain, Plaintiff Kumara's performance of a series of allegedly mundane tasks allowed the

Parklane store to stay open and fulfill its purpose.  When viewed in this context, it is clear that Plaintiff Kumara's activities at the Parklane store implemented the Defendants' overarching management policies, thus satisfying the first prong of the administrative exception short test. *See* Hills v. Western Paper Co., 825 F. Supp. 936, 938 (D. Kan. 1993).  (Duties of an employee charged with keeping track of bills and payments and monitored customers' credit worthiness were directly related to the management policies and general business operations of a paper company.); *See also* Hays v. City of Pauls Valley, 74 F.3d 1002, 1007-08 (10th Cir. 1996) (Golf course manager was an exempt administrator where manager kept financial records, made personnel recommendations, was responsible for the general operation of the golf course, and was not directly supervised on a day-to-day basis.)

Further, Plaintiff Kumara's job activities involved matters of discretion and independent judgment.  He represented the business through his transactions with customers.  Exhibit A at p. 27.  He could bind the business through his direct dealings with vendors and equipment repair people.  Id.  Moreover, he was responsible for supervising the other employees at the Parklane store, and had the authority to recommend to upper management the entire panoply of employment actions, from merit increases in pay to termination.  Exhibit A at pp. 28-34. Although Plaintiff Kumara did not have ability to hire or discipline employees without the consent of upper management, it does not necessarily follow that he did not exercise independent discretion and judgment in his work.  Id.  Indeed, "[a]lthough the decisions in question must be of significance, they need not be immune from review, revision, or reversal.  The types of decisions that qualify may be in the form of recommendations to superiors and subject to review and approval."  Stricker, 935 F. Supp. at 656, *citing*, 29 C.F.R. §541.207(e)(1).  *See also* Cheatham v. Allstate Ins. Co., 465 F.3d 578, 585 (5th Cir. 2006).  This is precisely the

relationship Plaintiff Kumara had with the Defendants, thereby satisfying the second prong of the administrative exception short test. *See* Exhibit A at pp. 28-34.

Based on the foregoing, it is clear that, at a minimum, there is a genuine issue of material fact as to whether Plaintiff Kumara was subject to the administrative exemption to the overtime provisions of the FLSA. The evidence suggests, if not outright proves, that Plaintiff Kumara's primary duty primary consisted of the performance of non-manual work directly related to the management policies and/or general business operations of the Defendants. Moreover, Plaintiff Kumara's performance of such duty required him to exercise a measure of discretion and independent judgment. Accordingly, Plaintiff Kumara's motion for partial summary judgment should be denied as it relates to the administrative exemption to the FLSA.

**B.** <u>**Plaintiff Kumara is not entitled to Summary Judgment on the Executive Exception.**</u>

Closely related to the administrative exception to the overtime provisions of the FLSA is the executive exception. <u>Stricker</u>, 935 A.2d at 657-58. ("Although employees with these duties are frequently deemed executives for purposes of FLSA, courts have held that such workers may be classified as administrators.") As the United States District Court noted in the <u>Stricker</u> case discussed above, "[s]tore managers are frequently held to be exempt under the executive category." <u>Id.</u> at 654. *See, e.g.,* <u>Donovan v. Burger King Corp.</u>, 675 F.2d 516, 520-22 (2d Cir. 1982) (Fast food restaurant assistant managers considered to be executives.); <u>Masilionis</u>, 904 F. Supp. at 1229-30 (Produce manager of a grocery store considered to be an executive under the FLSA exemption.)

An employee is a *bona fide* executive under the FSLA, and is thus exempt from receiving overtime, where a four (4) part test is met: 1) the employee was compensated on a salary basis at a rate of not less than $455 per week; 2) the employee's primary duty was management of the

enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; 3) the employee customarily and regularly directed the work of two or more employees; and 4) the employee had the authority to hire or fire other employees or he could make suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees which input was given particular weight. 29 C.F.R. §541.100. *See also* Haines v. Southern Retailers, Inc., 939 F. Supp. 441, 445 (E.D. Va. 1996).

Based on this standard, it is clear that Plaintiff Kumara was a *bona fide* executive under the FSLA and is therefore exempt from receiving overtime pay. Plaintiff Kumara's motion for partial summary judgment should be denied on this ground. A discussion of each of the elements of the *bona fide* executive exemption follows.

### 1.    Plaintiff Kumara Was In Management.

As an initial matter, the wage element of the executive exemption is not in dispute. *See* Memorandum of Law In Support of Plaintiff's Motion for Partial Summary Judgment at p. 16. Therefore, for purposes of the instant motion, the Defendants need only show a genuine issue of material fact as to the second, third, and fourth elements of the test set forth above.

In this case, it is clear that Plaintiff Kumara's primary duty was management of the Parklane store, a subdivision of the Defendants' business enterprise. Indeed, the interpretive regulations are clear that "where an enterprise comprises more than one establishment, the employee in charge of each establishment may be considered in charge of a subdivision of the enterprise." 29 C.F.R. §541.104(b). *See also* Haines, 939 F. Supp. at 446 (Holding that each individual "Southern Express" convenience store meets the definition of "subdivision.")

Turning to the primary duty issue, it is important to revisit the relevant interpretive regulations on this point. Again, such regulations state that:

> [I]n some…subdivisions of an establishment, an employee has broad
> responsibilities similar to those of the owner or manager of the establishment, but
> generally spends more than 50 percent of his time in production or sales work.
> While engaged in such work he supervises other employees, directs the work of
> warehouse and delivery men, approves advertising, orders merchandise, handles
> customer complaints, authorizes payment of bills, or performs other management
> duties as the day-to-day operations require. He will be considered to have
> management as his primary duty.

29 C.F.R. §541.103.

As indicated by Defendant Mamdouhi in his deposition, Plaintiff Kumara was given more or less free reign to run the Parklane store. Defendant Mamdouhi and/or Mr. Nezam would check in at the Parklane store in the morning, and would then leave for the remainder of the work day in order to tend to affairs at the Parkland store. Exhibit A at pp. 11, 63-64. The Parkland store did not have a manager, as it was run by Defendant Mamdouhi and Mr. Nezam themselves. Exhibit A at p. 64. Further, Plaintiff Kumara was charged with opening and closing the Parklane store, resetting the alarm system, performing simple repairs of the cleaning equipment, putting change in the cash register, turning on the computer system, setting the boiler, dealing with customers, keeping track of other employees' time, interacting with vendors and repair people, stocking necessary supplies, and reporting the status of the store's operations. Exhibit A at pp. 18, 26-28. Finally, Plaintiff Kumara was responsible for instructing the workers at the Parklane store, and for reporting to Defendant Mamdouhi and/or Mr. Nezam if the workers were not performing satisfactorily. Exhibit A at p. 28, Exhibit D at ¶ 3. Moreover, Plaintiff Kumara was authorized to recommend an increase in an employees' pay, or that an employee be disciplined or fired. Exhibit A at pp. 28-34.

These facts constitute much more than a mere scintilla of evidence in support of the Defendants executive exemption defense. Indeed, it would not be a stretch to suggest that such facts would present a formidable motion for summary judgment on the executive exemption

issue if contained in a motion *filed by the Defendants*, let alone set forth in the opposition to such a motion.

In any event, at this stage of litigation, the Court must draw all justifiable inferences in favor of the Defendants, the non-moving party. Anderson, 477 U.S. at 248, 106 S.Ct. 2505. Moreover, any credibility determinations of the sort alluded to by Plaintiff Kumara in his motion would be premature, as a summary judgment motion "is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences." Masilionis, 904 F. Supp. at 1226. "[S]ummary judgment is appropriate only where application of the law to [those] undisputed facts will reasonably support only one ultimate conclusion." Richardson, 180 F.3d at 438. That is certainly not the case in light of the current state of the record in this matter. At a bare minimum, the array of specific testimony regarding Plaintiff Kumara's job activities while in the Defendants' employ is sufficient to create a genuine issue of material fact as to whether Plaintiff Kumara had management as his primary job duty. *Cf.* McGrath, 864 F. Supp. at 489. ("The current record does not enable the court to determine, as a matter of law, whether the Commanders' 'primary duty' is management.") Accordingly, Plaintiff Kumara's Motion for Partial Summary Judgment on the executive exemption issue should be denied.

**2.    Plaintiff Kumara Customarily and Regularly Directed the Work of Two or More Employees.**

The second requirement of the executive exemption to the overtime pay provisions of the FLSA is that the employee customarily and regularly directed the work of two or more employees. 29 C.F.R. §541.100. This requirement can be resolved with dispatch. Between the Defendants' answers to Plaintiff Kumara's interrogatories, and Defendant Mamdouhi's deposition testimony, the Defendants have identified no less than nine (9) employees who were

supervised by Plaintiff Kumara. *See* Defendants' Answer to Interrogatory No. 2, attached hereto as Exhibit E. *See also* Exhibit A at pp. 38. Moreover, there is nothing in the record to suggest that Plaintiff Kumara's management of such individuals was anything other than customary and regular. Exhibit A at pp. 28-35. Indeed, Plaintiff Kumara held the position of manager for his entire tenure in the Defendants' employ. Exhibit A at pp. 8, 18, 21-22, 31. Based on these transparent facts, there can be little question that Plaintiff Kumara is not entitled to summary judgment on this issue.

3.    **Plaintiff Kumara Had Authority To Recommend Employee Discipline.**

Finally, as discussed in greater detail above, it can hardly be disputed that Plaintiff Kumara had the authority to make suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees, and that such input was given particular weight. 29 C.F.R. §541.100. The fact that no one was fired during Plaintiff Kumara's tenure as manager of the Parklane store is misleading and of little relevance to the resolution of this issue. Defendant Mamdouhi testified that he did not personally fire anyone during Plaintiff Kumara's tenure as manager. Exhibit A at pp. 30-31. Neither did Mr. Nezam. Id. However, Defendant Mamdouhi made it clear in his deposition that he expected that Plaintiff Kumara would report to him regarding employee discipline and morale issues. Exhibit A at p. 28. From time to time, such reports included recommendations that certain people be fired. Exhibit A at pp. 32. ("As far as I remember, but as far as firing, he did say to fire people that would not listen, but we worked it out. I went and talked to them and [found] out the problem and correct[ed] it, they didn't get to the point [of getting fired.]") The mere fact that Defendant Mamdouhi chose to counsel the problem employees rather than fire them does not necessarily support the conclusion that Plaintiff Kumara's suggestions regarding employee hiring and firing

were given little weight. *See* <u>Stricker</u>, 935 F. Supp. at 656. It is equally probable that there was some reason why Defendant Mamdouhi chose to counsel the problem employees, other than that Plaintiff Kumara's recommendation was being summarily disregarded. It is therefore for the jury to resolve the extent to which Plaintiff Kumara had the authority to make suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees, and whether such input was given particular weight. A genuine issue of material fact remains in dispute regarding this issue, thereby rendering summary judgment inappropriate.

## <u>CONCLUSION</u>

WHEREFORE THE REASONS SET FORTH ABOVE, Defendants JAAM, Ltd., t/a Parklane Cleaners, and Faramarz Mamdouhi respectfully request that the Plaintiffs' Motion for Partial Summary Judgment be denied.

Respectfully submitted,

GLEASON, FLYNN, EMIG
& FOGLEMAN, CHARTERED

___/s/ Gerard J. Emig_____
Gerard J. Emig, #973609
Matthew J. Focht, #480906
11 North Washington Street, Suite 400
Rockville, MD 20850
(301) 294-2110

Attorneys for Defendants

## REQUEST FOR ORAL ARGUMENT

Defendants hereby request oral argument on all issues raised herein.

_____/s/ Gerard J. Emig_____
Gerard J. Emig

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT THIS 19th day of December, 2006, a copy of the foregoing

Defendants' Memorandum of Points and Authorities In Opposition To Plaintiffs' Motion for

Partial Summary Judgment was served electronically on:

Philip B. Zipin, Esq.
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910

_____/s/ Gerard J. Emig_____
Gerard J. Emig