**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROSHAN KUMARA MALALGODAPITIYA : | |
| : | |
| *On Behalf of Himself and* : | |
| *All Others Similarly Situated* : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No.: RJL-CV-06-430 |
| : | |
| JAAM, LTD. : | |
| t/a PARKLANE CLEANERS, *et al.* : | |
| : | |
| Defendants. : | |

**OPPOSITION TO DEFENDANT JAMM, LTD'S MOTION FOR A PROTECTIVE ORDER**

Plaintiff Roshan Kumara Malalgodapitiya ("Plaintiff") by and through his attorneys, Philip B. Zipin and The Zipin Law Firm, hereby opposes the Motion for a Protective Order (the "Motion") by which Defendant JAAM, LTD, ("Defendant") seeks to be relieved from its obligation to produce tax returns for 2003, 2004, 2005, 2006. For the reasons set forth below, Defendant's Motion should be denied.

**I.   PROCEDURAL POSTURE**

On or about March 8, 2006, Plaintiff filed the above-captioned action, on his own behalf and on behalf of other similarly situated colleagues, against his former employers seeking the recovery: (1) of unpaid minimum and overtime wages under the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA") (2) for wages due under the Maryland Wage Payment and Collection Law, Maryland Code, Labor and Employment Article §§ 3-501 *et seq*. ("MWPCL"); (3) for wages due under the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 *et seq*. (4) for

wages due under the D.C. Wage Payment and Wage Collection Act, D.C. Code §§ 32-1301 *et seq.*; and (5) for damages due for breach of contract.

On November 27, 2006, the parties filed a joint motion to extend discovery until January 15, 2007. On December 8, 2006, pursuant to the Court's Scheduling Order, Plaintiff filed a Motion for Partial Summary Judgment as to liability only and requested that this Court hold as a matter of law that Plaintiff was not an exempt administrative or executive employee under the FLSA. If the Court grants Plaintiff's Motion for Partial Summary Judgment, the remaining issues for trial will be the hours the Plaintiff worked, his rate of pay, whether Defendants' conduct was willful, and the appropriate amount of damages, including liquidated and/or additional damages under the FLSA and/or the MWPCL.[1]

## II. MERITS

### A. The Production of Defendant's Tax Returns Is Not Oppressive Or An Undue Burden

On November 30, 2006, Plaintiff served his Second Request for Production of Documents on Defendant JAAM, Ltd seeking the production of a single category of documents:

> All federal and state tax returns filed by JAAM, Ltd. for the years 2003, 2004, 2005 and 2006, including all schedules attached thereto. This request specifically includes quarterly payroll reports filed with federal and state governments.

On December 14, 2006, Defendant filed its Motion arguing, in essence, that the production of such materials would be an oppressive and undue burden on Defendant

---

[1] At the outset, as Plaintiff is only seeking Defendant's tax returns for purposes of this litigation, he would agree to any reasonable protective order, which may include a confidentiality stipulation and a stipulation that he would return or destroy the tax returns once litigation has concluded.

2

because the materials are not relevant. Memo at 3-6. Other than arguing relevancy, Defendant does not explain how or why providing this information would be an oppressive or undue burden. Indeed, this information should be readily available, would not be voluminous or require time-consuming research, and can be turned over immediately.

### B.     Defendant's Tax Returns Are Relevant to Plaintiff's Case-in-Chief

The scope of discovery is quite broad. "Parties may obtain discovery regarding *any matter*, not privileged, that is relevant to the claim … Relevant information *need not be admissible at the trial* if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). (Emphasis added). Defendant's tax returns fit within this threshold.

Defendant's income tax returns are potentially central to Plaintiff's contention that he is entitled to recover for three years of unpaid wages. If the Plaintiff can prove that Defendant acted *willfully* as it was violating the FLSA it will owe Plaintiff three years of back overtime and/or minimum wage as opposed to two years. *See* 29 U.S.C. 255(a) ("Any action accruing after May 14, 1947, must be commenced within two years, except that a cause of action arising out of a *willful violation* must commence within three years.") (emphasis added). As explained in *Bailey v. Ameriquest Mortg. Co.*, 200 U.S. Dist. 1343, *12-*13 (D.Minn. 2002), *rev'd on other grounds*, 346 F.3d, 822 (8th Cir. 2003):

> Under the FLSA, the scope of an employer's liability and thus a plaintiff's measure of damages is directly tied to the limitations provision. That is, a plaintiff who demonstrates a violation of the FLSA is entitled to recover unpaid overtime wages for the two-year limitations period provided in § 255(a). ***However, a finding of willfulness extends the limitations period from two to three years, thereby allowing a***

3

> *plaintiff to recover damages for an extra year*. *Soler v. G & U Inc.*, 628 F. Supp. 720, 723 (S.D.N.Y. 1986) (concluding that defendants are subject to an additional year of liability for a willful violation of the FLSA); *Pautlitz v. City of Naperville*, 874 F. Supp. 833, 1994 U.S. Dist. LEXIS 8475, No. 98- C-8855, (N.D. Ill. 1994) (determining whether the two-year or three-year limitations period applies for purposes of assessing damages on summary judgment motions); *Pollis v. New School for Social Research,* 132 F.3d 115, 120 (2d Cir. 1997) (explaining that compensatory damages are calculated by reference to the three-year limitations period for willful violations, and the resulting compensatory award should be doubled pursuant to the Fair Labor Standards Act's liquidated damages provision). (Emphasis added).

Defendant believes that by owning up to the obvious -- that it did not withhold any income taxes from Plaintiff's pay which was paid in cash and not by payroll check -- it should be let off the hook. Memo at 2. Unless Defendant is prepared to concede that Defendant's conduct was willful, however, Defendant's admission alone -- however, damaging -- is not dispositive on whether its conduct was willful. As defined by the Supreme Court, *willful* means that the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988). The burden of proving *willfulness*, of course, lies with the Plaintiff and he should be afforded every opportunity to meet this burden.

Far from conceding that its conduct was willful, however, Defendant has asserted affirmative defenses which place at issue whether it knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. For example, Defendant asserts the following defenses:

> Plaintiff Roshan Kumara Malalgodapitiya was paid his earned wages in accordance with applicable law;
>
> Any failure to pay Plaintiff Roshan Kumara Malalgodapitiya earned wages arose out of a good faith belief by the Defendants that they were

4

>acting in accordance with applicable law;

>Any failure to pay Plaintiff Roshan Kumara Malalgodapitiya earned wages arose out of a reasonable belief by the Defendants that they were acting in accordance with applicable law.

Def. Ans. at Seventh Defense, Thirteenth Defense, and Fourteenth Defense.

Defendant's tax returns may speak directly to whether it acted "in good faith" or had "a reasonable belief" that it was acting in "accordance with applicable law." For example, on Employer's Quarterly Federal Tax Return, Form 941, an employer must, under penalty of perjury, indicate the "[n]umber of employees who received wages, tips, or other compensation for the pay period," what those wages were, and how much income tax it withheld. *See* IRS Form 941, attached hereto as Exhibit 1. Thus, quarter by quarter and year after year, Defendant was reminded that it must properly report this information. Plaintiff should surely be allowed to test (and not be forced to take Defendant's "good" word) regarding how far its unlawful behavior went with respect to Plaintiff's wages which Defendant was supposed to be reporting.[2]

In fact, Plaintiff believes Defendant had a scheme to defraud the government out of paying employment taxes and social security, which included hiring undocumented workers, such as Plaintiff, to work long hours at very low pay. This scheme included refusing to pay these undocumented workers, including Plaintiff, lawful wages. Defendants calculated that they would never be caught, and that, in any event, Plaintiff would be too compromised by virtue of his precarious immigration status to protest.

Both owners of Defendant testified that there were other employees who were

---

[2] Indeed, a central issue in dispute is whether Defendant paid Plaintiff $500.00 per week, as contended by Defendant, or $250.00 per week as Plaintiff has testified. Form 941 filed by Defendant with the Federal Government -- listing the employees and the amount of wages paid to each during the relevant quarter -- would surely shed light on this disputed of fact.

paid "under the table." *See* Deposition of Mehdi Nezam ("Nezam Depo.") at 14, Exhibit 2 (admitting there was "one or two who did not have social security numbers."); Deposition of Faramarz Mamdouhi ("Mamdouhi Depo.") at 37-39, Exhibit 3 (admitting, "there were one or two…"). Defendant's asserted " good faith" or "reasonable belief" that it was acting in accordance with applicable law should be considered in light of information reported to the Federal Government regarding Plaintiff and other undocumented workers from its tax returns.

Moreover, Defendant fails to cite a single case in which a court granted a motion for a protective order relieving a party from producing business tax records in a wage or overtime context. The reason for the dearth of case law on this point seems obvious:  in a wage and hour case, defendants understand that tax records are discoverable and simply turn them over in the ordinary course of discovery.[3]

Instead, Defendant cites *Washington v. Thurgood Marshall Academy*, 232 F.R.D. 6 (D.D.C. 2005), as its prime support. However, that case is distinguishable. First, *Washington* is not a wage and hour case. Second, the plaintiff was *pro se* and made "no effort to explain why defendant's tax returns [were] within the permissible scope of discovery under Rule 26." *Id*. at *11. The Court might well have ruled differently had the *pro se* Plaintiff articulated a reason as to how defendant's tax returns were relevant.  We will never know, however, because she did not articulate *any* reasons.  In contrast, Plaintiff herein has articulated several bases which render Defendant's tax returns relevant or reasonably calculated to lead to admissible evidence.

### C.    Defendant's Tax Returns Go To Credibility

---

[3]    Tax records would also be relevant to the issue of whether Defendant is an "enterprise" and thus subject to the constraints imposed on employees by the FLSA.  29 U.S.C § 203 (s) (requiring annual sales of $500,000 to qualify for "enterprise" coverage under the FLSA.)

6

Whether the Court grants Plaintiff's Motion for Partial Summary Judgment as to liability or not, there are several factual issues in dispute for a jury to resolve where credibility will be a determining factor. For example, the parties dispute the hours Plaintiff worked, his rate of pay, and his duties. Moreover, as noted, Defendant claims that even if it failed to pay Plaintiff properly, the oversight was reasonable and made in good faith. Plaintiff submits Defendant's violation of law was willful.

Of course, the major reason why the hours Plaintiff worked and his rate of pay are at issue is because Defendants failed to maintain payroll records -- as required by law -- regarding how much they paid Plaintiff and his hours worked.[4] Mamdouhi Depo. at 12-13. Without these payroll records, a jury will be required to make a credibility finding and decide which party is telling the truth and which party is not.

It is axiomatic that the filing of false statements in a tax return would have a bearing on one's credibility. Plaintiff has every right to discover for himself if Defendants filed false tax returns, how egregious the false statements or omissions were, how often Defendant knowingly filed tax returns containing false statements, or even if Defendant filed at all. <u>Moreover, this information is not discoverable any other way.</u>

Federal Rule of Evidence 611(b) provides, in pertinent part, that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed.R.Evid. 611(b). Federal Rule of Evidence 608(b) also provides that specific instances of misconduct "may … in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or

---

[4] Indeed, Defendants actually destroyed the only written evidence of the cash payments made to Plaintiff. Nezam Depo. at 15-16.

7

untruthfulness ….ced." Fed.R.Evid. 608(b). Thus, the Federal Rules of Evidence specifically contemplate this exact scenario. *See Chnapkova v. Koh*, 985 F.2d 79, 82 (2nd Cir. 1993) (holding that "[b]ecause the plaintiff's credibility in this unusual case was of such crucial importance, and because her failure to file tax returns bore directly on her credibility, the district court's decision to exclude testimony regarding that failure was an abuse of discretion."); *See also* <u>United States v. Singer,</u> 241 F.2d 717 (2nd Cir.1957) (holding, before the advent of the Federal Rules of Evidence, that the "use [of a tax return], for the purpose of impeachment, was proper."). Of course, here, any argument of admissibility at trial is premature and is not a relevant consideration as to whether the information is discoverable.

### III.    CONCLUSION

Plaintiff has met the low threshold for discoverability under the Federal Rules. The tax returns he seeks should be produced for two independent reasons. First, Defendant's tax returns are relevant to proving that Defendant's conduct was willful. If willfulness is proven, Defendant will owe Plaintiff one additional year of back wages and overtime pay. Second, Defendant's tax returns reflect on Defendants' credibility if they reveal the filing of false statements under oath.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for a Protective Order.

Respectfully submitted,

_____/s/_____
Philip B. Zipin, Bar No.: 367362
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
301-587-9373

8

pzipin@zipinlaw.com
Counsel for Plaintiff