IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSHAN KUMARA MALALGODAPITIYA  :<br>   :<br>*On Behalf of Himself and*  :<br>*All Others Similarly Situated*  :<br>   :<br>         Plaintiff,  :<br>   :<br>      v.   :   Case No.: RJL-CV-06-430<br>   :<br>JAAM, LTD.   :<br>t/a PARKLANE CLEANERS, *et al*.  :<br>   :<br>         Defendants.  :  | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Roshan Kumara Malalgodapitiya ("Kumara"), by and through his undersigned counsel, hereby submits this Reply to the Opposition ("Defs' Opp."), filed by Defendants, JAAM, Ltd, t/a Parkland Cleaners and Farmarz Mamdouhi, ("Defendants") to Kumara's Motion for Partial Summary Judgment ("Motion"). As set forth below, there are no material facts in dispute and Kumara is entitled to judgment as a matter of law that he was not an exempt administrative or executive employee under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA"). Even assuming the truth of Defendants' factual assertions in their Opposition, Defendants cannot meet their heavy burden of proving that Kumara was an exempt employee.

### I.  LEGAL ARGUMENT

Defendants understandably ignored several undisputed facts that were mentioned in Kumara's Motion. When making its determination whether Kumara is an exempt employee or

not[1], Kumara respectfully requests that the Court make its determination in light of the following ignored and undisputed facts.

First, *at the time* Defendants hired Kumara ostensibly as a store manager, they already had a store manager, Mangelo Mawilmada ("Mani"). Deposition of Faramarz Mamdouhi, excerpts of which are attached to Motion as Exhibit 2 ("Mamdouhi Depo."), at 34-35. Yet, despite their admission to the contrary, Defendants continue to claim that *they hired* Kumara as the store manager. *See* Defendants Interrogatory Answers, attached to Motion as Exhibit 3 at No. 6; *See also* Defs' Opp. at 21 ("Indeed, Plaintiff Kumara held the position of manager for his entire tenure in the Defendants' employ."). The undisputed fact that Defendants already had a store manager in Mani, taken together with the ignored and undisputed facts below, puts serious doubt into several of Defendants' claims, most of all its assertion that it hired Kumara as a store manager. Defs' Opp. at 21.

Second, Defendants ignored in its Opposition the fact that *it knew* Kumara did not have any dry cleaning experience or management experience, *but yet still claim they hired him as the store manager anyway*. Mamdouhi Depo. at 7 and 22. Third, Defendants also ignore the fact that they never provided Kumara with a job description or *a formal title*. Mamdouhi Depo. at 8, 18. It is not believable or credible that an employer would hire someone as a store manager, but yet not tell that person he is now responsible for managing the entire store. Indeed, Kumara submits that fact alone is dispositive. *See Stricker v. Eastern Off Road Equipment, Inc.*, 935 F.Supp. 650, 652 (D.Md. 1996) (the plaintiff "applied for and secured a job described in the newspaper as the "Store Manager"). Fourth, Kumara was an undocumented worker.

---

[1] Whether Kumara is an exempt or non-exempt employee is a matter of law to be determined by the Court. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

In viewing these facts in tandem, Defendants would have this Court believe that they hired Kumara as the store manager although: (1) they already had a store manager in Mani; (2) Kumara was an undocumented worker; (3) Kumara had no substantive dry cleaning experience; (4) Kumara possessed no managerial experience; (5) Kumara had little or no understanding of local and federal labor and employment laws; and (6) Defendants never told Kumara he was the store manager, with all the significant responsibilities that come from that important position.

### A. Kumara Was Not An Exempt Administrative Employee

Defendants rely almost exclusively on *Stricker*,[2] *supra,* to support its notion that Kumara falls under the administrative exemption. Defs' Opp. at 12-16. Kumara agrees that *Stricker* is illustrative of the difference between an employee who falls under the administrative exemption and one who does not. Of course, the critical difference is that the *Stricker* court granted the employer's motion for summary judgment because there was no question that Stricker performed exempt administrative duties. *Stricker*, 935 F.Supp. at 659. Here, the undisputed facts demonstrate that Defendants misclassified Kumara as an exempt administrative employee. The distinctions in *Stricker* help prove that point.

Stricker, unlike Kumara, applied for a position described in the newspaper as a "Store Manager." *Id*. at 652. After a three week *management* training course (absent here), the plaintiff assumed his position as Store Manager. *Id.* The employer contended that Stricker was responsible for sales, profit, and the management of all controllable expenses (none of which Kumara was responsible for) as well as inventory and physical upkeep of the store. *Id.*

Stricker's job description as store manager (absent here) listed the following duties:

---

[2] Although *Stricker* was decided under the pre-April 24, 2004 Regulations, the analysis for determining whether an individual falls under this exemption is virtually identical under either pre- or post-April 24, 2004 Regulations. *Robinson-Smith v. Geico,* 323 F.Supp.2d 12, 18 (D.D.C. 2004).

>Training and development of personnel; recommending personnel for promotions and transfers; ensuring that the proper procedures are followed when an employee leaves the company; and supervising the performance of personnel including ensuring that employees follow company policy with respect to: company money and property, store appearance and merchandising, records and all other paperwork, the store's check policy, the timely opening and closing of the store, managing the flow of inventory, and the time management of employees. *Id.*

In *Stricker*, the parties agreed that Stricker was the highest ranking employee at the store. *Id.* By contrast, besides Defendants' bare assertion (as described in Kumara's Motion and more fully below), that Kumara was the highest ranking employee, there is no credible evidence to suggest that he was.

>Stricker conceded he was responsible for:
>
>organizing the charges, balancing the cash register [not a responsibility of Kumara], organizing the sales tickets or invoices, tracking sales, making the bank deposit up … recording and logging special orders, and recording … the breakdown in sales. *Id.* at 656.
>
>In addition, Stricker
>
> [opened] all mail addressed to the store or the store manager [not a responsibility of Kumara's], set up and maintain[ed] store displays, open[ed] the store in the morning and close[d] it at night, and respond[ed] to alarms when they sounded in the store. *Id.* at 657.

The Stricker court also noted that although Stricker did not have final authority, he was authorized to recruit, interview, and recommend prospective hires to the regional manager. *Id*. Of course, here, the undisputed evidence suggests that Defendants never informed Kumara that he was ostensibly the store manager or authorized to perform those tasks.

Importantly, and in further contrast to Kumara, Stricker was responsible to upper management for the financial health of the store, including reaching retail sales goals. *Id*. at 657. Moreover, Stricker also supervised the assistant store manager. *Id.* Although Defendants claim

4

in their Opposition that Utuh Rahardja Putra ("Utuh") was an "*assistant* manager[3]," Defendants concede that Kumara did not supervise him. Defs' Opp. at 20-21.

### 1. Kumara's Primary Duty Did Not Directly Relate to Management or General Business Operations

Defendants argue that the following work duties performed by Kumara directly related to management policies or general business operations of the dry cleaning store:[4] supervising employees,[5] opening and closing the store, keeping the store adequately supplied, making minor repairs to cleaning equipment, administering the cash register,[6] dealing with customers, and coordinating with vendors." Defs' Opp. at 15. In conclusory fashion, Defendants assert that Kumara's duties meet this prong because Kumara's duties: (1) "implicate[d] the setting and/or implementation of the business' operational policies"; (2) "allowed the Parklane store to stay open and fulfill its purpose"; and (3) "implemented the Defendants' overarching management policies." *Id.* at 15-16. By failing to describe how these duties fall under the "functional areas" described in 29 U.S.C. § 541.201(b), set forth at footnote 4, it is difficult to assess how Kumara meets this requirement.

---

[3]     Of note, Defendants' assertion that Utuh was an "assistant manager," Defs' Opp. at 4, 15, is not supported by the evidence. In response to the deposition question, "Did [Utuh] have a title," Mamdouhi testified, "Manager in the front." Mamdouhi Depo. at 39.

[4]     The April 24, 2004 regulations ("Regulations") promulgated by the Secretary of Labor state:

Work *directly related to management or general business operations* includes, but is not limited to, work in *functional areas* such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. 29 U.S.C. § 541.201(b) (emphasis added).

[5]     Kumara responds to Defendants' argument that Kumara supervised employees in Section B, *infra*.

[6]     "…administering the cash register…" simply means that Kumara, like thousands of employees across America working at department stores and the like, put change in the register in the beginning of the day. Mamdouhi Depo. at 26.

By contrast, in *Stricker*, the District Court found that Stricker's job duties "involving routine and special procurement of inventory, negotiating prices with dealers and purchasers of the store's merchandise, the Dealer Sales Program, and the cash management of the store" satisfied the requirement that his primary work duties directly related to the management policies or general business operations of the store. *Stricker,* 935 F.Supp. at 657.  If *Stricker* were decided under 29 U.S.C. § 541.201(b)[7], Stricker's work duties would likely fall under finance, purchasing, advertising, and/or marketing.

Of course, here, Defendants do not contend that Kumara was responsible for the financial health of the store, reaching sales goals, or cash management of the store.  Instead, at best, Defendants can barely describe someone who was "engaged in the day-to-day carrying out of its business' affairs," which is of no solace because the "directly related" test is only "met if the employee engages in *running* the business itself or *determining* its overall course or policies." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002) (internal quotation marks omitted) (emphasis added).  Simply put, Defendants do not contend Kumara ran the business or determined its overall course or business policies.

Defendants also state that Kumara dealt with customers and believe this duty somehow is relevant to this specific inquiry. Defs' Opp. at 15. First, in light of Kumara's typical day -- which Defendants do not dispute -- Kumara was not primarily dealing with customers.[8]  In fact, as

---

[7]  The precursor to § 541.201(b) was § 541.205(b), which the *Stricker* court relied upon. *Sticker*, 935 F.Supp. at 657.  Section 541.205(b) reads, "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control."

[8]  The following was a typical day for Kumara at the Parklane Dry Cleaning Store:

| | |
|---|---|
| 6:30am: | Opened the store (turn off security alarm, turn on boiler, put cash and change in the register) |
| 7:00am – 10:00am: | Tagged clothes for dry cleaning |

6

conceded, he only "help[ed]" out in the front of the store in the late afternoon. Second, dealing with customers is typically a "front line" employee's job and is not similar to any of the functional areas described under 29 C.F.R. § 541.201(b) set forth at footnote 4, *supra*. Indeed, Kumara did not lead a team of employees assigned to complete a major project, he was not an administrative or executive assistant in a large business, and he did not formulate, interpret or implement employment policies, which are typical examples of the types of positions and duties that fall under this exemption. 29 U.S.C. § 541.203(c)(d), and (e).

### 2. Kumara's Primary Duty Did Not Include the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance

Defendants must also prove by clear and convincing evidence that Kumara exercised discretion and independent judgment in the performance of his primary duties for Defendants. 29 C.F.R. § 541.200(a)(3). Defendants first claim that Kumara exercised discretion and independent judgment in representing the business through transactions with customers.[9] Defs' Opp. at 16. Defendants, however, fail to explain what "transacted with customers" means or how Kumara exercised discretion or independent judgment in the context of its dry cleaning business, as

| | |
|---|---|
| 7:45am: | Wrote down the times of when everyone arrived at the store and called co-owners Fred or Mathew to inform them if anyone was late or did not show up |
| 8:00am – 9:00am: | Owners alternated coming to the store. They would check the computers, take money from the previous day, answer customer complaints, and take care of employee problems |
| 10:00am – 4:30pm: | Finished tagging same day service items; assembled dry cleaning and folded shirts |
| 4:30pm – 7:00pm: | Checked to see that the delivery person took the proper dry cleaning and laundry; helped in front of store |
| 7:00pm: | Closed store (hide money; turn on security alarm, lock door) |

Kumara Aff. attached as Exhibit 1 to Motion, at ¶ 4.

---

[9] Defendants also believe Kumara's executive employee responsibilities qualify. As discussed below, Kumara was not an executive employee.

7

defined by 29 C.F.R. 541.202(b), set forth at footnote 10.[10]  Of note, Mamdouhi actually stated that Kumara *dealt* with customers, not that he transacted with them, a word that clearly has a more significant meaning to Defendants.  Mamdouhi Depo. at 27.

As stated, Defendants do not dispute Kumara's typical work day, which only mentioned that Kumara "help[ed]" out in the front of the store in the late afternoon. Fn 8. Given that undisputed fact, Kumara's primary duty[11] could not have been dealing with customers.  Recall, Utuh managed the front of the store from June 2004 through April 2005, meaning he, not Kumara, dealt with customers, during that time frame. Mamdouhi Depo. at 39. Lastly, Defendants do not dispute Kumara's assertion that the owners would take care of customer complaints on a typical morning, which further contradicts Defendants' assertion that Kumara had the ability to exercise discretion and independent judgment with respect to this purported duty. Fn 8.

Defendants also claim that Kumara had the ability to bind the business through his dealings with vendors and equipment repair people. Defs' Opp. at 16.  This alleged "fact" does not aid Defendants.  First, by definition, dealing with contractors to service machines could not

---

[10]   The Regulations outline factors to consider when evaluating whether an employee exercises discretion and independent judgment.  The following are some of the factors noted:

> whether the employee has *authority to formulate, affect, interpret, or implement* management policies or operating practices; whether the employee carries out *major assignments* in conducting the operations of the business; whether the employee performs work that affects business operations to a *substantial degree*; whether the employee has authority to commit the employer in matters that have *significant financial impact*, whether the employee has authority to *waive or deviate from established policies and procedures without prior approval,* whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievance. 29 C.F.R. 541.202(b) (emphasis added).

[11]   The term "primary duty" means the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

be a primary duty unless Defendants are prepared to argue their machines needed servicing on a near-daily basis.

Second, even assuming Kumara had the authority to deal with contractors, this work duty does not fall under the rubric of "authority to commit an employer to matters that have *significant impact*." 29 C.F.R. 541.202(b) (emphasis added). As the Regulations clearly state:

> An employee does not exercise discretion and independent judgment with respect to matters of significance *merely* because the employer will *experience financial losses* if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer. 29 C.F.R. 541.202(f) (emphasis added).

Granted, the dry cleaning store would experience financial losses without properly working machines. However, as the Regulations point out, that is not the test. The term "matters of significance refers to the level of importance or consequence of the *work* performed." 29 C.F.R. 541.202(a) (emphasis added). As noted, the term *work* in this context typically means, for example, one who works in tax; insurance; purchasing; advertising; human resources; labor relations; or legal and regulatory compliance. 29 U.S.C. § 541.201(b), set forth at footnote 4.

In comparison, the plaintiff's work in *Stricker* that involved him exercising discretion and independent judgment were:

> procurement of inventory, particularly special orders, establishing relationships with dealers pursuant to the Dealer Sales Program, supervising the assistant manager, and establishing prices for merchandise all involving matters which commit defendants "in substantial respects financially and otherwise." *Stricker*, 935 F.Supp. at 657.

Put more plainly, the Regulations are meant to exempt an employee, like Stricker, who not only performs duties in procurement, advertising, marketing, or finance (if under the post-2004 Regulations), but who also regularly makes business decisions of importance within those areas. 29 C.F.R. 541.202(a).  Calling a contractor from time to time to service a dry-cleaning machine does not rise to that level of importance, as contemplated by these Regulations.

### 3. Kumara's Primary Duties Did Not Consist of Office or Non-Manual Work

Finally, with respect to the administrative exemption, Defendants must prove by clear and convincing evidence that Plaintiff's primary duties consisted of the performance of "office or non-manual work." 29 C.F.R. § 541.200(a)(2).  Kumara did not work in an office setting or perform non-manual office work as his primary duty.  Without explanation, Defendants argue the evidence suggests otherwise. Defs' Opp. at 17.

The undisputed facts, however, shed light on this subject.  Kumara primarily performed manual and repetitive tasks such as opening and closing the store, resetting the alarm system, fixing machines, putting change in the cash register, turning on the computer, setting the boiler, assembling dry cleaning and setting the security alarm at the close of business. Mamdouhi Depo. at 26-28; *See also* Kumara's typical day at Fn. 8 (*i.e.,* tagging clothes for dry cleaning). Kumara primarily performed repetitive tasks such as assembling dry cleaning and tagging clothes. *Id.* By contrast, the District Court in *Stricker* found that the plaintiff there did not perform any "repetitive manual tasks." *Stricker*, 935 F.Supp. at 658.

The facts set forth above, and the legal principles applicable to those facts, clearly demonstrate that Defendants cannot prove by clear and convincing evidence that Kumara's primary duties satisfy the administrative exemption. Accordingly, Kumara respectfully requests

that this Honorable Court hold as matter of law that his duties did not fall under the FLSA's administrative exemption.

### B. Kumara's Duties Do Not Fall Under The Executive Exemption

In order to prevail under the executive exemption, Defendant must prove -- again, by clear and convincing evidence -- that: (1) Kumara was compensated on a salary basis at a rate of not less than $455 per week; (2) his primary duty was management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) he customarily and regularly directed the work of two or more other employees; and (4) he had the authority to hire or fire other employees or he could make suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees which input was given particular weight.  29 C.F.R. § 541.100.

#### 1.   Kumara Was Not In Management[12]

Defendants hope that if they re-state all of Kumara's work duties, including his purported supervisory ones, in every element in both exemptions, the Court will forget to look at the credible evidence, not just Defendants' naked assertions.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (a nonmoving party, must establish more than "the mere existence of a scintilla of evidence" in support of its position.); *See also Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999) ("the nonmoving party may not rely solely on allegations or conclusory

---

[12]   "Management" includes, but is not limited to activities such  as:

interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances, disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or property; planning and controlling the budget; and monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102

statements. Rather, the nonmoving party must present *specific facts* that would enable a reasonable jury to find in its favor.")(emphasis added).

Specifically, Defendants claim that Kumara was responsible for instructing the workers and reporting if the workers were not performing satisfactorily. Defs' Opp. at 19. In addition, Defendants assert that Kumara was authorized to recommend an increase in an employees' pay or that an employee be disciplined or fired. *Id.*  As fully described in Kumara's Motion, if Kumara was indeed in management, it would be easy to cite several examples in each category of where he instructed an employee, reported an unsatisfactory worker, recommended an increase in employees' pay, or recommended discipline.  However, Defendants cannot cite to one instance *in any category* where Kumara performed these purported duties. Mamdouhi Depo. at 28-34. Additionally, Defendants claim that Kumara had the "authority to report an unsatisfactorily worker" is of no help because Kumara did not have the authority to *discipline* that employee, as described in 29 C.F.R. § 541.102. Indeed, Defendants handled "employee problems" in a typical morning.  Fn 8.

Moreover, as noted above, Defendants purportedly hired Kumara as the store manager, but yet failed to inform him of his title or give him a job description. Mamdouhi Depo. at 8, 18. Given that Kumara adamantly refutes Defendants' claim that he was the store manager, Defendants should surely be able to explain when they gave Kumara these critical responsibilities, how the information was received, and how he subsequently performed. Yet again, Defendants hope this Court ignores the *specific facts*, and credits only its bald conclusions and generalities.

The fact is, there is not a scintilla of probative evidence or specific fact which would permit a reasonable jury to find that Kumara was an exempt "executive." Indeed, when

12

repeatedly asked for specific examples of Kumara's alleged executive functioning, Mamdouhi's response was "I can't recall." Mamdouhi Depo. at 28-34.

### 2. Kumara Did Not Customarily and Regularly Direct the Work of Two or More Employees

Defendants cannot show that Kumara customarily and regularly directed the work of two or more employees. As stated, Defendants omitted the critical undisputed fact that Mani was managing the store when Defendants purportedly hired Kumara as the store manager. Mamdouhi Depo. at 35. Defendants also ignore the fact that Kumara had no dry cleaning experience or management experience, but yet want this Court to believe that "Kumara held the position of manager for his entire tenure in the Defendants' employ." Defs.' Opp. at 21.

At any rate, as is their *modus operandi*, Defendants name nine (9) employees that Kumara was supposed to have been supervising *without explaining* how he performed this complicated task of supervising 9 employees, particularly in light of Kumara's daily schedule, already filled with menial tasks. Fn 8. Instead, Defendants merely state "there is nothing in the record to suggest that Plaintiff Kumara's management of such individuals was anything other than customary and regular." *Id*. Of course, the burden is on Defendants to prove "by clear and affirmative evidence" that Kumara was exempt. *Roney v. U.S.A.,* 790 F.Supp 23 (D.D.C. 1992) (emphasis added). Defendants' bald and conclusory assertion -- in the face of Kumara's uncontested evidence regarding his daily schedule -- cannot create a factual dispute.

Both parties have conducted extensive discovery, including the taking the depositions of all key witnesses. If Kumara were truly a supervisor, it should be an easy showing that Kumara

was in management. Indeed, Defendants could make this showing in several ways.[13] For example, Defendants could show Kumara was involved in

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances, disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; [etc.]
> 29 C.F.R. § 541.102.

Defendants, however, are unable to establish any evidence, even "a scintilla" of it, to support their position that Kumara somehow supervised employees. In fact, there is no evidence that Kumara even *assisted* the owners in any of the above categories. However, even if this Court finds that keeping track of employees' time constitutes assisting the owners in their duties of management, that fact does transform Kumara into an exempt "executive." 29 C.F.R. § 541.104(c) ("An employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement.").

### 3. Kumara Did Not Have the Authority to Hire or Fire Other Employees

In their Opposition, Defendants claim "it can *hardly be disputed* that Plaintiff Kumara had the authority to make suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees, and that such input was given particular weight." Defs' Opp. at 21. (Emphasis added). As noted, if Defendants truly bestowed management authority upon Kumara, it should be easy to make a showing at this stage.

---

[13] Kumara has provided this Court with a sworn affidavit showing a typical day at the dry cleaning store, which included showing that the owners of the store handled "employee problems." Fn. 8. Defendants do not dispute that fact. Given that it is difficult to prove the negative, Kumara submits the Court should look to all the evidence submitted by Defendants during extensive discovery to help determine whether he was an executive employee.

In fact, according to Defendants, Kumara was the store manager since the day it hired him in late 2001 through mid-2005. Yet, Defendants *still* cannot cite to one instance *within any category* where Kumara performed his purported supervisory duties.

Given that Defendants cannot recall even one specific example of Kumara making *any* recommendations, it is impossible for Defendants to meet their heavy burden of showing -- by clear and convincing evidence -- that Kumara's recommendations carried particular weight.

## II.   CONCLUSION

There are no material facts in dispute on the issue of Kumara's status as a non-exempt employee. The facts set forth above, and the legal principles applicable to those facts, demonstrate that Defendants cannot meet their burden of proving by clear and convincing evidence that Kumara's primary duties satisfy either the administrative or executive exemption from overtime pay required by the FLSA. Accordingly, Kumara respectfully requests that this Honorable Court hold as matter of law that his duties did not fall under either of these narrow exemptions.

Respectfully submitted,

_____/s/_____
Philip B. Zipin, Bar No.: 367362
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910
301-587-9373
pzipin@zipinlaw.com

Counsel for Plaintiff